UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONTROL BUILDING SERVICES, INC.,

       Plaintiff,

v.                                                 Case No. 06-11663
                                               Honorable Patrick J. Duggan

KMART CORPORATION.,

       Defendant.
_____/

**OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on January 18, 2007.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                       U.S. DISTRICT COURT JUDGE

This action, which was transferred to this district from the United States District Court for the District of New Jersey, arises from a Services Agreement for Janitorial Services ("Services Agreement") between Plaintiff Control Building Services, Inc. ("Control") and Defendant Kmart Corporation ("Kmart"). In its complaint, Control alleges that Kmart has failed to pay $2,406,729.70 for services Control rendered to Kmart under the Services Agreement. Presently before the Court is Kmart's motion for [partial] summary judgment pursuant to Federal Rule of Civil Procedure 56(c) with respect to $1,738,147 of the total amount claimed by Control. The Court held a hearing on Kmart's motion on January 16, 2007.

**I.**      **Factual Background**

In March 2003, Kmart and Control entered into a Services Agreement pursuant to which Control agreed to provide specified janitorial services at certain Kmart stores in the southeastern United States, beginning April 1, 2003. *See* Kmart's Mot. Ex. D. The Services Agreement listed a weekly price per store that Kmart would pay Control for the specified services. One of the services required under the contract was one annual "strip out" at each of the Kmart stores covered by the Services Agreement. *See id*. A strip out is a service whereby a store's old floor wax is removed and a new coat of wax is set down. Under the Services Agreement, the cost of the strip out ($2,500-$2,800) was spread out over the year by allocating a portion of it into each store's weekly invoice.

In April 2004, representatives of the parties discussed changes to the Services Agreement. *See* Kmart's Mot. Ex. B at 14-16. These discussions were between Tommy Gray and Jeff Gray on behalf of Control and Rod Brumley on behalf of Kmart. *See id*. One of the changes was to reduce the weekly invoice price per store by eliminating the amount built in for the annual strip out. *See id*. at 18-19. In lieu of the annual strip outs, Control would perform a strip out at a particular store only when requested by Kmart and then would invoice Kmart separately for the strip out. *See id*. Ex. E. Control also agreed to provide twenty free strip outs at certain Kmart stores. *See id*. The parties further discussed reducing from two to one the number of individuals performing daily cleaning at Kmart's stores in all but two individuals' districts within the region. *See id*. Ex. E.

Thereafter, Control submitted weekly invoices at the reduced prices to the Kmart stores receiving routine cleaning. Control also invoiced Kmart separately for any

required strip outs and provided twenty free strip outs to Kmart.  In the Spring of 2005, however, an issue arose as to whether the parties in fact had amended the Services Agreement the previous April.  By that time, the individuals involved in the April 2004 discussions no longer worked for their respective companies.  Rick Pittsonberger was Kmart's replacement for Rod Brumley.

In the Spring of 2005, store managers from some of Kmart's stores sent inquiries to Pittsonberger about separate invoices they had received from Control for strip outs. *See* Control's Resp. Ex. H.  Pittsonberger advised the stores to return the invoices to Control unpaid, accompanied with a letter advising that the annual strip out is included in the current weekly contract price.  *See id*.  Pittsonberger wrote: "Unless Control Building Services can provide written documentation in the form of a Contract Amendment or confirmation from Mr. Brumley [Pittsonberger's predecessor] that annual strip-outs were removed from the contract; [sic] the Contract language stands."  *See id*.

On August 2, 2005, Control sent Kmart a series of e-mails which had been exchanged between the parties' representatives in April 2004, regarding modifications to the Services Agreement.  In a letter dated August 10, 2005, Pittsonberger informed Control that Kmart found that the e-mails provided insufficient evidence of an amendment to the Services Agreement:

> We are in receipt of the E-Mail history you forwarded on August 2, 2005.  In review of the E-Mails and attachments we find that the majority are confirming meetings or [are] information[al] in content.  We find no expressed approval from Mr. Brumley authorizing or amending the contexts [sic]

>of the current Services Agreement.

>With the above in mind we remain with the position that there were no changes authorized or amendments made to the Services Agreement.

Kmart's Mot. Ex. G. In light of Kmart's position, Control sent Kmart "Revised Invoices" totaling $1,738,147 on September 30, 2005, reflecting the difference between the weekly pricing under the Services Agreement that included the cost of the annual strip outs and the reduced weekly pricing discussed in April 2004 that excluded the strip outs. In-house counsel for Kmart[1], Lori Miller, responded via e-mail on November 11, 2005, informing Control that "[t]he revised invoices sent to Kmart . . . have no validity based upon the amended contract and will not be paid." *See id*. Ex. H.

In the meantime, in late September 2005, Kmart notified Control that Kmart believed Control was in breach of the parties' agreement in that Control had failed to pay several subcontractors and had not provided adequate janitorial services to several Kmart locations. *See id*. Ex. I. On October 4 and 7, 2005, Kmart informed Control that it was terminating the Services Agreement for certain Kmart locations due to Control's substandard performance of janitorial services at those facilities. *See id*. at Ex. J & Ex. K. Kmart further informed Control that it was withholding any payments due until the resolution of all outstanding disputes between the parties. *See id*.

---

[1] Ms. Miller actually is Assistant General Counsel of Sears Holdings Corporation ("Sears"), of which Kmart is a wholly owned subsidiary. *See* Kmart's Mot. Ex. H ¶ 5. Sears' Assistant General Counsel routinely prepared written correspondence in response to claims for payment by Kmart's vendors. *See id*.

Control thereafter initiated this lawsuit against Kmart, seeking the payments it claims are due.

## II.     Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255. The inquiry is whether the evidence

presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant."  *See id.*

### III.   Discussion

Kmart seeks partial summary judgment with respect to $1,738,147 of the $2406,729.71 sought by Control in its complaint, the first amount representing the difference between the weekly price for janitorial services at Kmart's stores set forth in the original Services Agreement and the lower weekly price allegedly agreed to by the parties in April 2004.  Kmart argues that there is no genuine issue of material fact that the parties amended the Services Agreement and agreed to the lower pricing.  Kmart further argues that it is entitled to summary judgment even if the parties did not amend the original agreement because there is no genuine issue of material fact that Control did not perform the services entitling it to payment of this amount– i.e. annual strip outs at Kmart's stores.

At the motion hearing on January 16, 2007, counsel for Control agreed that there was an amendment to the agreement as claimed by Kmart and that Control performed numerous strip outs at Kmart's request for which Control has not been paid.  In response, counsel for Kmart acknowledged that Control claims that it performed strip out services at Kmart's request for which it has not been paid, but he disputes that Kmart owes any money for strip outs.  According to Kmart's counsel, Kmart unsuccessfully sought information from Control itemizing the alleged instances in which strip out services were performed and for which no payment was made.  Control contends that it furnished Kmart

the information requested.

Based on the exchange at the motion hearing, the Court finds no genuine issue of material fact with regard to whether the parties amended the Services Agreement in 2004. The Court, however, cannot reach the same conclusion with respect to Control's claim that it performed strip outs following the amendment for which it was not paid. The Court is satisfied that the parties have not engaged in a meaningful exchange of information with respect to those strip outs. Therefore, at the hearing, the Court directed the parties to meet and attempt to ascertain specifically the identity of the stores and the dates on which Control contends it provided stip out services and for which it has not been paid.

Accordingly,

**IT IS ORDERED**, that Kmart's motion for [partial] summary judgment is **DENIED WITHOUT PREJUDICE.**

                                   s/PATRICK J. DUGGAN
                                   UNITED STATES DISTRICT JUDGE

Copies to:
Norman E. Greenspan, Esq.
Patrick M. McCarthy, Esq.